David **BUNTZMAN**

v.

**SPRINGFIELD REDEVELOPMENT AUTHORITY, et al.**

Civ. A. No. 89–30085–S.

United States District Court, D. Massachusetts.

Feb. 12, 1993.

---

4. *See Williams v. McNamara,* 118 F.R.D. 294, 296–97 (D.Mass., 1988).

See also 142 F.R.D. 386.

Max D. Stern, Dennis A. Shedd, Stern & Shapiro, Boston, MA, for David Buntzman.

Francis D. Dibble, Jr., Jerome M. Scully, Bulkley, Richardson & Gelinas, Charles V. Ryan, Jr., Ryan, Martin, Costello, Allison & Leiter, William F. Howard, III, Springfield, MA, for Springfield Redevelopment Authority.

Charles V. Ryan, Jr., Ryan, Martin, Costello, Allison & Leiter, Springfield, MA, for Springfield Cent. Foundation, Inc.

John D. Ross, III, Springfield, MA, for Springfield Cent. Development, Inc.

### ORDER

PONSOR, United States Magistrate Judge.

For the reasons stated in the accompanying Memorandum, Defendants' Motions to Compel (Docket Nos. 148 and 149) are hereby ALLOWED, with the following provisions. The SRA's request for unspecified "financial statements" is hereby DENIED on the grounds of vagueness, burdensomeness and overbreadth. The plaintiff is required to disclose only tax returns for the years 1986, 1987, 1988 and 1989. The disclosure will be made in accordance with any existing confidentiality agreements, or if no such agreement exists, on the understanding that the returns may be reviewed by counsel, retained experts, necessary clerical personnel and one representative of each defendant only, except by further order of the court. No copies of the returns will be made, no use will be made of them except for this litigation and they will be returned intact to the plaintiff at the conclusion of the lawsuit.

It is So Ordered.

### MEMORANDUM REGARDING DEFENDANTS' MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS

#### (Docket Nos. 148 & 149)

#### I. INTRODUCTION.

The defendant Springfield Redevelopment Authority has filed a motion to compel, seeking disclosure of unredacted federal and state income tax returns for the years 1985 through 1990, and unspecified "financial statements" prepared by the plaintiff. The other defendants seek only copies of unredacted federal and state income tax returns for the years 1986 through 1989. For the reasons set forth below, the court will allow the defendants' motions, but only as to federal and state income tax returns for the years 1986 through 1989. In a separate scheduling order, the court has established a timetable for completion of all pretrial proceedings in this case.

#### II. FACTUAL BACKGROUND.

The factual allegations underlying the complaint are complex, but essentially the lawsuit grows out of a taking by the defendant Springfield Redevelopment Authority

("SRA") of the Union Station in downtown Springfield, Massachusetts, which had been owned by the plaintiff. Defendants claim the taking occurred after the plaintiff failed to produce realistic plans for the development of the property in accordance with the applicable urban renewal plan. The plaintiff claims that he made prodigious efforts to produce a plan for development, but was consistently frustrated by the defendants, who refused to offer him any guidance as to what might ultimately be acceptable. Instead, according to the plaintiff, the defendants simply made more and more detailed requests for information, and more and more costly demands for studies, culminating in a meeting of the SRA board on March 2, 1989 at which, in executive session, it voted to take the property by eminent domain. Plaintiff claims that these actions violated both his substantive and procedural due process rights.

As part of the discovery phase of this case, defendants have sought tax returns and financial statements of the plaintiff. Plaintiff has provided redacted versions of some of his federal returns, but has otherwise refused to produce the documents. The court heard argument on the motions to compel on February 2, 1993, and received a flurry of correspondence from all counsel during the week following. As noted above, the court will allow the motions to compel, to a limited extent.

## III. DISCUSSION.

Fed.R.Civ.P. 26(b)(1) provides that parties "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party...." This rule further states that "it is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

It is well settled that tax returns do not enjoy an absolute privilege from discovery. *St. Regis Paper Co. v. United States*, 368 U.S. 208, 218–19, 82 S.Ct. 289, 295–96, 7 L.Ed.2d 240 (1961). Wright & Miller recognize that a few early decisions found tax returns privileged but that there is now "overwhelming authority to the contrary and the matter should now be considered resolved." 8 Wright & Miller, *Federal Practice and Procedure*, § 2019 at 163 (1970).

In the Second Circuit, courts have frequently followed the logic of *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625 (E.D.N.Y. 1988). This case establishes a two-prong test: first, the tax returns must be relevant to the action; second, the information contained in the returns must not be otherwise obtainable. The burden to show relevancy lies on the party seeking the returns; the party resisting disclosure bears the burden of establishing alternative sources for the information. *Id.* at 627.

Although the *Bonanno* decision has not been cited, the District of Massachusetts approaches requests for disclosure of income tax returns in the same spirit. In *Pogharian v. Croce*, C.A. 81–1307–F (D.Mass. July 29, 1985), Judge Freedman, affirming this magistrate judge's ruling and citing Wright & Miller, stated that "[w]here a party has put in issue the amount of [his] income, that party's tax returns or reasonable substitutes are discoverable. *See Federal Savs. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D.Ill.1972)." In *Halperin v. Berlandi*, 114 F.R.D. 8 (D.Mass.1986), Magistrate Judge Alexander stated that "[t]ax returns are subject to discovery as long as they are relevant to the subject matter of the litigation" (citing *Heathman v. United States Dist. Court for Cent. District*, 503 F.2d 1032 (9th Cir.1974); *Powell v. Merrimack Mut. Fire Ins. Co.*, 80 F.R.D. 431, 433 (N.D.Ga.1978); *Weiner v. Bache Halsey Stuart, Inc.*, 76 F.R.D. 624, 627 (S.D.Fla. 1977)).

In this case, the plaintiff's financial condition is relevant to the subject matter of this litigation. Indeed, the central dispute underlying this lawsuit is plaintiff's contention that he was able (with reason-

able cooperation from defendants) to develop the property in accordance with the controlling plan, and the defendants' response that he was either unwilling or unable, for financial or other reasons, to do so. Although the depositions and documents produced to date are subject to various interpretations, one reasonable gloss on this discovery is that the plaintiff represented that he had personal funds available to back the project. Under these circumstances, the plaintiff's financial condition falls squarely within the broad discovery outline contemplated by Rule 26.

Plaintiff has not come forward to offer defendants any alternative avenue of discovery that would provide them with equivalent information about the plaintiff's financial condition immediately preceding the taking. Under these circumstances, *Bonanno* and the other decisions cited persuade this court that the defendants should be given access to the plaintiff's tax returns, subject to a proper confidentiality order, which defendants have already agreed to.

Plaintiff offers two arguments in opposition to the defendants' motions. First, plaintiff's counsel suggests that defendants are exploiting the plaintiff's natural sensitivity about disclosure of his personal financial information, in an attempt to harass him into abandoning the lawsuit. Certainly, manipulation of what plaintiff's counsel rightly termed a "hot button" issue like personal tax returns can have this effect. The other side of the coin, however, is that fairly discoverable information cannot be withheld on the ground that discomfort arises in disclosing it. Moreover, the problem can be cooled somewhat by the confidentiality order.

Second, plaintiff argues that the plaintiff's actual financial condition is not relevant to this litigation. Whether plaintiff was a multi-billionaire or a pauper, the argument runs, the real issue in this case is the good faith of the defendants in their relations with the plaintiff based upon what *they* reasonably perceived his financial resources, personal or otherwise, to be. This is a colorable argument, but it ignores the wide net cast by Rule 26. Even if plaintiff's theory of the case were correct—and defendants contest it—plaintiff's actual financial condition, and its bearing on the projections offered by the plaintiff to the defendants and, in turn, the defendants' perceptions of plaintiff's ability to carry the project, would be relevant generally to the "subject matter" of this litigation.

Finally, plaintiff requested at oral argument, if the court were going to order disclosure of the tax returns, that he be given some period of time to consider whether he might wish to amend his complaint and to argue on reconsideration that the discarded claims rendered the tax returns irrelevant, even under the broad rubric of Rule 26. The timing of the court's order will accommodate this concern.

 Although this ruling will provide the defendants with tax returns, it will not go as far as the motion to compel of the Springfield Redevelopment Authority. The taking occurred in March of 1989; the court will therefore require the disclosure only of state and federal tax returns for the years 1986, 1987, 1988 and 1989. Moreover, the SRA's request for unspecified "financial statements" will not be allowed on the grounds of vagueness, burdensomeness and overbreadth. The disclosure of the returns will be made in accordance with any existing confidentiality agreements, or if no such agreement exists, on the understanding that the returns may be reviewed by counsel, retained experts, necessary clerical personnel and one representative of each defendant only, except by further order of the court. No copies of the returns will be made, no use will be made of them except for this litigation and they will be returned intact to the plaintiff at the conclusion of the lawsuit.

## IV. CONCLUSION.

For the foregoing reasons, the defendants' Motions to Compel will be allowed, in part. A separate order has issued this date.